HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDWARD STROMAN and
ANNETTE STROMAN, wife and
husband, and the marital community
comprised thereof,

                    Plaintiffs,

   v.

STATE FARM FIRE AND
CASUALTY COMPANY, *et al.*,

                    Defendants.

CASE NO. C18-1297 RAJ

ORDER

This matter comes before the Court on Plaintiff's Motion to Remand and For Attorney Fees ("Motion to Remand"), and Defendant State Farm Fire and Casualty Company's ("State Farm") Motion to Compel.  Dkt. ## 13, 15.  Both motions are opposed, and both parties have filed replies.  Dkt. ## 20, 22, 24, 26, 32.  For the reasons that follow, the Court **RESERVES RULING** on Plaintiffs' Motion to Remand, and **GRANTS IN PART AND DENIES IN PART** State Farm's Motion to Compel.  Dkt. ## 13, 15.

ORDER- 1

## I. BACKGROUND

On February 14, 2017, Plaintiffs, who are Washington residents, allegedly discovered a water loss at their Mill Creek, Washington home, and reported the loss to their homeowners' insurance carrier, State Farm. Dkt # 1-1, ¶¶ 1.3, 3.1-3.3. Plaintiffs contend through State Farm's referral, a remediation company responded to the loss to dry the home, JC Services Inc. d/b/a ServiceMaster of King County ("JC Services"), a Washington corporation. *Id.* at ¶¶ 1.3, 3.3-3.6. Plaintiffs, State Farm, and JC Services disputed the extent of the water damage, the cost to repair, the extent of the necessary drying, and whether mold developed as a result of allegedly insufficient and improper drying. *Id.* at 3.8, 3.11, 3.18, 3.19, 3.21.

Plaintiffs filed an action against State Farm and JC Services in King County Superior Court on August 14, 2017. Dkt. # 1, ¶ 1. In the original complaint, Plaintiffs asserted several claims against State Farm, as well as claims against JC Services, alleging that JC Services "negligently damaged the plaintiffs' house and other property" and "failed to properly dry out the water damage, leading to mold growth in the Stromans' home." Dkt. # 8, Ex. 1, at ¶¶ 14.1, 14.2. Specifically, Plaintiffs asserted claims against JC Services for breach of contract, violation of the CPA, aiding and abetting insurance bad faith, negligence, and negligent misrepresentation. *Id.* Plaintiffs later filed an Amended Complaint on March 30, 2018, and a Second Amended Complaint of May 18, 2018, which added another Defendant (ServiceMaster Company LLC). Dkt. # 1 at ¶ 1.

Plaintiffs later settled with Defendant JC Services. Plaintiffs contend that part of the settlement concerned an inspection of Plaintiffs' personal property stored at JC Services' warehouse, which was initially scheduled for late June 2018 but extended to July 27, 2018. Dkt. # 16, ¶ 4. Plaintiffs contend that a "dispute also arose over additional storage charges that had been incurred while the parties negotiated the damage claims," which led to the alleged withholding of certain settlement funds for Plaintiffs. Dkt. # 17, ¶ 3. Plaintiffs also claim the "settlement checks" were exchanged on August 7, 2018 and

were given to Plaintiffs' counsel's accounting department for disbursement on that date. *Id*. at ¶¶ 3-5. Plaintiffs further contend that on August 16, 2018, once the settlement check cleared and the funds were available for disbursal, Plaintiffs signed a stipulation and dismissal order for JC Services, served the order on State Farm's counsel, and filed it, dismissing its claims against JC Services. *Id*. at ¶ 5, Ex. A.

On August 31, 2018, State Farm removed this matter to this Court, claiming that Plaintiffs acted in bad faith to prevent State Farm from removing within one year of the suit's commencement. Dkt. # 1. Plaintiffs moved to remand, and State Farm moved to compel production of Plaintiffs' settlement agreement and certain communications with JC Services. Dkt. ## 13, 15. Both motions are now before this Court.

## II. DISCUSSION

"Federal courts are courts of limited jurisdiction." *Heacock v. Rolling Frito-Lay Sales, LP*, No. C16-0829-JCC, 2016 WL 4009849, at *1 (W.D. Wash. July 27, 2016); *see* 28 U.S.C. §§ 1331–1332. District courts have "original jurisdiction" for causes of action that exceed an amount in controversy of $75,000.00 and where there is complete diversity between the parties. 28 U.S.C. § 1332(a)(1). An individual is a citizen of the state in which he is domiciled, not his state of residence. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A "corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business." *Heacock*, 2016 WL 4009849, at *1 (quoting *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990)).

A case originally filed in state court, over which a federal court would have jurisdiction, may be removed to federal court. 28 U.S.C. § 1441(a). A case that lacks complete diversity when it was filed in state court, but which subsequently becomes diverse, may be removed within one year of the case being filed in state court, unless the Court finds that "the plaintiff has acted in bad faith in order to prevent [removal]." 28 U.S.C. § 1446(c).

It is well-settled that "settlement with a non-diverse party does not establish diversity jurisdiction unless and until that party is dismissed from the action." *Bishop v. Ride the Ducks Int'l, LLC*, C18-1319-JCC, 2018 WL 5046050, at *2 (W.D. Wash. Oct. 17, 2018) (citing *Dunkin v. A.W. Chesterton Co.*, Case No. C10-458-SBA, 2010 WL 1038200, slip op. at *2 (N.D. Cal. March 19, 2010). There is no dispute that JC Services was not dismissed until after one year from the date of filing. State Farm also admits that it removed the case more than one year after it commenced in state court. Dkt. # 1. Thus, even if the settlement agreement was negotiated prior to the one-year cutoff date, diversity jurisdiction would not be established until JC Services was actually dismissed.

This Court must therefore remand this matter unless State Farm can prove that Plaintiffs acted in bad faith to prevent removal. 28 U.S.C. § 1446(c). The Ninth Circuit has yet to establish a standard for evaluating bad-faith attempts to prevent removal, but other courts in this District have previously held that it is "a high burden." *Heacock*, 2016 WL 4009849, at *3. For example, bad faith is shown when a plaintiff names non-diverse defendants, but then "fail[s] to actively litigate a claim against [those defendants] *in any capacity*," and then dismisses them after the one-year deadline. *Id.* (emphasis in original).

The Court finds that the current record does not indicate the level of "bad faith" necessary to justify removal. First, the record shows that Plaintiffs did not act in bad faith in naming JC Services as a Defendant or fail to litigate their case against them – a concession State Farm readily makes. Dkt. # 26 at 7 ("State Farm does not claim JC Services was added to the suit for the sole purpose to avoid removal."). Indeed, Plaintiffs brought several cognizable claims against JC Services for its role in the damage and repair efforts of Plaintiffs' home. Plaintiffs served written discovery on JC Services, responses to which JC Services provided on October 13, 2017, and produced documents. Dkt. # 16, Ex. A. JC Services has also participated in at least two site visits to plaintiffs' home since this litigation commenced. Dkt. # 16, ¶ 3. Plaintiffs have taken one

deposition, a state-court Rule 30(b)(6) deposition of State Farm. *Id*. at ¶ 7, Ex. B. Plaintiffs also demonstrate that they sought additional information about JC Services through indirect discovery, such as in a Rule 30(b)(6) deposition of State Farm. Dkt. # 16, Exs. B-E. Although the Ninth Circuit has not yet explicitly adopted an "active litigation" test, here Plaintiffs' active litigation against JC Services indicates that they did not act in bad faith in naming JC Services as a Defendant. *See Weber v. Ritz-Carlton Hotel Co., L.L.C.*, 4:18-CV-03351-KAW, 2018 WL 4491210, at *4 (N.D. Cal. Sept. 19, 2018) ("Accordingly, because the Court finds that Plaintiff actively litigated against [defendant], good faith is presumed."). This weighs against an overall finding of bad faith.9

State Farm instead argues that even if Plaintiffs initially litigated in good faith against JC Services, Plaintiffs acted in bad faith when they settled with JC Services prior to the one-year cutoff, but intentionally delayed executing and filing the joint stipulation of dismissal with JC Services to prevent removal. Dkt. # 26 at 7-10. State Farm notes the suspicious one year and two days' timing of the filing of the stipulation and dismissal of JC Services. *Id*. Generally, in the timing for naming a non-diverse defendant, the timing of dismissal and the explanation given for that dismissal are relevant issues to the bad faith inquiry. *Heacock*, 2016 WL 4009849, at *3. Suspicious timing by itself, however, is not sufficient to demonstrate bad faith. Courts in this District have previously found that a dismissal of a non-diverse defendant approximately one and one-half months after a state court action's filing did not indicate bad faith. *Bishop v. Ride the Ducks Int'l, LLC*, C18-1319-JCC, 2018 WL 5046050, at *2 (W.D. Wash. Oct. 17, 2018). Other courts have also found that the dismissal of a non-diverse defendant thirteen days after the commencement of the action insufficient to signify that the plaintiff acted in bad faith. *See Weber v. Ritz-Carlton Hotel Co., L.L.C.*, 4:18-CV-03351-KAW, 2018 WL 4491210, at *4 (N.D. Cal. Sept. 19, 2018). This Court likewise finds that the dismissal of JC Services one year and two days after the commencement of the

state court action, by itself, does not establish Plaintiffs' alleged bad faith in preventing removal.

State Farm points to other facts suggesting a bad faith delay, such as (1) Plaintiffs cancelling a deposition for JC Services in June 2018 without explanation; (2) Plaintiffs filing a stipulation and dismissal without including the date in the signature lines; (3) Plaintiffs and JC Services delaying the inspection of personal property as a way to delay executing the settlement agreement; and (4) Plaintiffs refusing to produce discovery on the parties' settlement agreement. Dkt. # 26 at 8-9. Plaintiffs counter with explanations, supported by declarations and evidence, for why the alleged delay occurred. Some of these explanations appear reasonable. For instance, State Farm's own conversations with JC Services indicate that as of July 30, 2018, there were still several "loose ends" to resolve on a potential settlement. Dkt. # 1 at 4. Plaintiffs also note difficulties in negotiating with JC Services about inspection of personal property, which could provide a basis for delays in finalizing the settlement in June and July, which apparently corroborates JC Services' account. Dkt. # 16, ¶ 4. Plaintiffs' counsel claims they did not intentionally delay filing the stipulation and dismissal to August 16, 2018, but because this was the day that the settlement check cleared, and funds could be disbursed. Dkt. # 17, ¶ 5. State Farm expresses skepticism as to these claims, but State Farm is required to do more than cast doubt; it must present evidence or argument that eclipses the "high threshold" of showing Plaintiffs' bad faith in preventing removal. Thus far, State Farm has failed to do so.

Accordingly, if the Court were to consider only the current record, it would find that State Farm has failed to make the necessary showing that Plaintiffs acted in "bad faith" to prevent removal, and therefore Section 1446(c)(1)'s one-year limitation on removal applies. State Farm, however, has also filed a Motion to Compel, requesting this Court to direct Plaintiffs to respond to its settlement-related discovery requests, and delay ruling on the Motion to Remand until it receives its answers. Dkt. # 13. State Farm

specifically requests "full and complete responses to Defendant State Farm's Second Interrogatories and Third Requests for Production." *Id*. at 1. These discovery requests consist of (1) one Interrogatory, which seeks disclosure of the settling entities, amount, and terms of the settlement; and (2) a Request for Production, which requests the settlement agreement itself and related communications. Dkt. # 14 at 8.

The Court may grant such discovery at its discretion. *See Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) ("[A] court may allow discovery to aid in determining whether it has in personam or subject matter jurisdiction . . . [t]his matter is generally left to the discretion of the trial court."); *see also Abrego v. Dow Chem. Co.*, 443 F.3d 676, 691 (9th Cir. 2006) ("'[S]ome courts have suggested that it may be appropriate to allow discovery relevant to jurisdictional amount prior to remanding.' Our decisions do not, however, indicate that such discovery is required. Indeed, we have previously held that '[a]n appellate court will not interfere with the trial court's refusal to grant [jurisdictional] discovery except upon the clearest showing that the dismissal resulted in actual and substantial prejudice to the litigant. . . .'") (quoting *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001), and *Wells Fargo*, 556 F.2d at 430 n.24) (internal citations omitted) (first alteration added).

The Court is somewhat skeptical that this discovery would yield evidence of the illicit agreement State Farm apparently believes exists between Plaintiffs and JC Services. However, as stated above, the timing of the settlement is relevant as to the bad faith inquiry, and thus whether this Court has jurisdiction over this matter. If Plaintiffs had executed the settlement agreement well in advance of the one-year cutoff but intentionally delayed dismissing JC Services until two days after the cutoff (or agreed with JC Services to do so), this fact may impact the Court's analysis on whether Plaintiffs acted in bad faith. It is not possible to ascertain this fact from the current record.

The Court is sensitive to Plaintiffs' concerns about the confidentiality of the settlement agreement, but "notes that there is no federal privilege preventing the

discovery of settlement agreements and related documents." *Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 523 (C.D. Cal. 2008) (citing case). Moreover, as this Court has previously held, a party "substantially weakens its argument for confidentiality of the settlement agreement by disclosing information about it." *Becker v. Precor, Inc.*, C08-1755RAJ, 2009 WL 3013656, at *3 (W.D. Wash. Sept. 16, 2009). Plaintiffs do so here by, for instance, claiming that one aspect of the settlement with JC Services involved coordinating the inspection of personal property, which caused a delay in executing the settlement. Dkt. # 15 at 5-6; Knudsen Decl. ¶ 4. Plaintiffs provide a declaration attesting to this fact, but do not provide any e-mails or communications in support. *Id.*; *see also Bishop v. Ride the Ducks Int'l, LLC*, C18-1319-JCC, 2018 WL 5046050, at *2 (W.D. Wash. Oct. 17, 2018) (finding that record did not support a finding of "bad faith" because plaintiffs "provided emails between his attorney and the City and State detailing the parties' negotiations"). While the Court is mindful that it is State Farm's burden to affirmatively prove bad faith to avoid remand, it is disconcerting that Plaintiffs claim the entire settlement agreement is "confidential" while selectively disclosing portions of it.

The Court finds that terms of the settlement agreement related to the timing of the execution of the agreement are relevant to assessing whether Plaintiffs acted in bad faith in preventing removal. The Court is, however, reluctant to allow an open-ended "fishing expedition" into whether Plaintiffs and JC Services engaged in a purported conspiracy to prevent removal. The Court also does not believe the entire settlement agreement between Plaintiffs and JC Services is necessarily relevant to decide this narrow issue. Accordingly, the Court will **GRANT IN PART AND DENY IN PART** State Farm's Motion to Compel. The Court will order Plaintiffs to produce a redacted version of the settlement agreement and certain related communications **within ten (10) days of this Order**. Specifically, Plaintiffs need not disclose the settlement amount, but must disclose (1) the date in which the settlement agreement was signed by both parties; and

(2) any provision of the agreement or communication between Plaintiffs and JC Services involving the timing of the execution of the settlement agreement, or the filing of the stipulation and dismissal.  Plaintiffs may redact information in the agreement and related communications that are not related to these topics.  Should Plaintiffs believe that additional protection is needed to maintain the confidentiality of this redacted document, Plaintiffs may move this Court for a protective order after meeting and conferring with State Farm.

The Court will **RESERVE RULING** on Plaintiffs' Motion to Remand, and the accompanying request for attorney's fees, until Plaintiffs have produced these documents. Once Plaintiffs have done so, **the parties are instructed to file a (preferably joint) status report, no more than five (5) pages in length**, addressing the status of the parties' positions with respect to Plaintiffs' Motion to Remand.

### III. CONCLUSION

For the reasons that follow, the Court **RESERVES RULING** on Plaintiffs' Motion to Remand and For Attorney Fees, and **GRANTS IN PART AND DENIES IN PART** State Farm's Motion to Compel.  Dkt. ## 13, 15.

Dated this 22nd day of April, 2019.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge